1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  | JOHNATHAN F.,[1]                          | Case No.:  24cv1774-WQH (MSB)

12  |                              Plaintiff,

13  | v.                                        | **REPORT AND RECOMMENDATION FOR ORDER AFFIRMING THE COMMISSIONER'S DECISION**

14  | FRANK BISIGNANO, Commissioner of the      | **[ECF NO. 15]**
    | Social Security Administration,[2]

15

16  |                              Defendant.

17

18         This Report and Recommendation is submitted to the Honorable William Q.

19  Hayes, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule

20  72.1(c) of the United States District Court for the Southern District of California.  On

21  October 4, 2024, Plaintiff Jonathan Fay ("Plaintiff") filed a Complaint pursuant to 42

22  U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a decision by the

23

---

24  [1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. §

25  405(g)] will refer to any non-government parties by using only their first name and last initial."
    [2] In May 2025, Frank Bisignano was sworn in as Commissioner of the Social Security Administration.

26  See https://www.ssa.gov/agency/commissioner.html (last visited Dec. 1, 2025).  Accordingly, Frank
    Bisignano is substituted as the defendant in this lawsuit.  See Fed. R. Civ. P. 25(d) ("An action does not

27  abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to
    hold office while the action is pending.  The officer's successor is automatically substituted as a

28  party.").

Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for supplemental security income and disability insurance benefits.  (ECF No. 1 ("Compl.") at 1.)

Now pending before the Court is Plaintiff's request to vacate the Commissioner's decision and remand the case for further administrative proceedings.  (See ECF No. 15 ("Mot.") at 15.)  The Court has carefully reviewed the Complaint [ECF No. 1], the Administrative Record ("AR") [ECF No. 11], Plaintiff's Motion [ECF No. 15], the Commissioner's Opposition ("Opp'n") [ECF No. 18], and Plaintiff's Reply ("Reply") [ECF No. 19].  For the reasons set forth below, the Court **RECOMMENDS** that judgment be entered **AFFIRMING** the Commissioner's decision consistent with this Report and Recommendation.

## I.    PROCEDURAL BACKGROUND

On November 3, 2021, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, alleging disability beginning on January 1, 2010.  (See AR 17.)  On May 17, 2022, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning on January 1, 2010.  (See id.)  The Commissioner denied Plaintiff's applications initially on March 20, 2023 [see AR 188–92], and again upon reconsideration on May 25, 2023 [see AR 195–99].  Plaintiff requested an administrative hearing on June 2, 2023.  (See AR 201–02.)  Administrative Law Judge ("ALJ") Erin Justice held a hearing on November 28, 2023.  (See AR 34–39.)  Plaintiff appeared at the hearing with a non-attorney representative, and the ALJ heard testimony from Plaintiff and a vocational expert.  (See id.)  As detailed in the ALJ's decision dated January 4, 2024 [AR 17–27], the ALJ found that Plaintiff has not been disabled under the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision.  (AR 27.)

Plaintiff requested review of the ALJ's decision on January 5, 2024.  (AR 4.)  The Appeals Council denied Plaintiff's request for review on August 13, 2024, rendering the ALJ's decision the final decision of the Commissioner.  (See AR 1–6; see also 42 U.S.C. §

1 | 405(h).)  Plaintiff filed the instant civil action on October 4, 2024, seeking judicial review

2 | of the Commissioner's decision.  (See generally Compl.)

3 | ## II.    SUMMARY OF THE ALJ'S FINDINGS

4 | In rendering her decision, the ALJ followed the five-step sequential evaluation

5 | process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  (See AR 18–19.)  At

6 | step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity

7 | since January 1, 2010, the alleged onset date."  (AR 19.)

8 | At step two, the ALJ found that Plaintiff has the following severe impairments that

9 | significantly limit his ability to perform basic work activities: degenerative disc disease,

10 | status post cervical fusion, post-traumatic stress disorder, and anxiety.  (AR 20.)  The ALJ

11 | also found that Plaintiff has nonsevere impairments of low vision and acid reflux but

12 | found "no evidence that these conditions significantly [limit] [Plaintiff]'s ability to

13 | perform basic work activities."  (Id.)

14 | At step three, the ALJ found that Plaintiff does not have an impairment or a

15 | combination of impairments that meets or medically equals the severity of one of the

16 | impairments identified in the Commissioner's Listing of Impairments.  (Id.)  Specifically,

17 | the ALJ considered listing 1.15 (disorders of the skeletal spine resulting in compromise

18 | of a nerve root(s)) and listing 1.16 (lumbar spinal stenosis resulting in compromise of the

19 | cauda equina) and concluded that the requirements for listing 1.15 and listing 1.16 are

20 | not met.  (Id.)  The ALJ also considered Plaintiff's mental impairments, individually and

21 | together, and concluded that the requirements for listing 12.06 (anxiety and obsessive-

22 | compulsive disorders) and listing 12.15 (trauma- and stressor-related disorders) are not

23 | met.  (AR 20–21.)

24 | Before proceeding to step four, the ALJ found that Plaintiff has the residual

25 | functional capacity ("RFC") to:

26 | [P]erform light work as defined in [20 C.F.R. §§ 404.1567(b) and 416.967(b)]
      except [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds

27 | frequently. [Plaintiff] can stand and/or walk for a total of about six hours and sit

28 | for about six hours in an eight-hour workday. [Plaintiff] can never climb ladders,

1    ropes, and scaffolds. [Plaintiff] can occasionally climb ramps and stairs. [Plaintiff]

2    can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] can

3    understand, remember, and perform simple work. [Plaintiff] can tolerate occasional changes in the workplace.

4    (AR 22.)

5    Further, the ALJ found that Plaintiff's medically determinable impairments could

6    reasonably be expected to produce his alleged symptoms.  (AR 23.)  However, the ALJ

7    concluded that Plaintiff's "statements concerning the intensity, persistence[,] and

8    limiting effects of these symptoms are not entirely consistent with the . . . other

9    evidence in the record."  (Id.)  The ALJ stated that "[g]reater residual functional capacity

10    limitations are not supported by the evidence that [Plaintiff] has been observed to have

11    a lack of physical or mental limitations throughout the record including [] evidence of a

12    normal gait, full ranges of motion, and a lack of observed social anxiety."  (AR 25.)

13    Based on the foregoing, the ALJ concluded that light work is appropriate, emphasizing

14    that this assessment "is supported by the overall medical evidence of record."  (AR 26.)

15    At step four, the ALJ found that Plaintiff does not have the residual functional

16    capacity to perform the requirements of his past relevant work because Plaintiff "has no

17    past relevant work."  (Id.)

18    Finally, the ALJ proceeded to step five of the sequential evaluation process.  Here,

19    the ALJ found that "there are jobs that exist in significant numbers in the national

20    economy that [Plaintiff] can perform."  (Id.)  The ALJ relied upon the vocational expert's

21    testimony that a hypothetical individual with Plaintiff's vocational profile and residual

22    functional capacity could perform the requirements of representative occupations such

23    as "[c]ashier II," "[f]ast food worker[]," and "[p]roduction assembler."  (AR 27.)  Thus,

24    the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security

25    Act from January 1, 2010, through January 4, 2024, and denied Plaintiff's applications

26    for supplemental security income and disability insurance benefits.  (See id.)

27    //

28    //

1

### III.    DISPUTED ISSUES

2    Plaintiff raises two issues as the bases for vacating the Commissioner's decision

3  and remanding the case for further administrative proceedings.  Those issues are

4  (1) whether the ALJ conducted a proper supportability and consistency analysis of the

5  opinion of Lane B. Andelin, Psy.D., and (2) whether the ALJ's RFC determination is

6  erroneous due to the ALJ's reliance on her own lay medical opinion.  (See Mot. at 7, 11.)

7

### IV.    STANDARD OF REVIEW

8    Section 405(g) of the Social Security Act allows unsuccessful claimants to seek

9  judicial review of the Commissioner's final decision.  See 42 U.S.C. § 405(g).  The scope

10  of judicial review is limited, and the denial of benefits will only be disturbed if it is not

11  supported by substantial evidence in the record or is based upon legal error.  Luther v.

12  Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (citations omitted).  The United States

13  Supreme Court interprets "substantial evidence" to mean "more than a mere scintilla,"

14  but only "such relevant evidence as a reasonable mind might accept as adequate to

15  support a conclusion."  Biestek v. Berryhill, 587 U.S. 97, 97 (2019) (quoting Consol.

16  Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Ninth Circuit further explains that

17  substantial evidence is "less than a preponderance."  Revels v. Berryhill, 874 F.3d 648,

18  654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573,

19  576 (9th Cir. 1988)).

20    When the evidence is susceptible to more than one rational interpretation, the

21  ALJ's decision must be upheld.  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir.

22  2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  While "the ALJ is

23  responsible for determining credibility, resolving conflicts in medical testimony, and []

24  resolving ambiguities[,]" those findings "must be supported by specific, cogent reasons."

25  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

26    Even if the reviewing court finds that substantial evidence supports the ALJ's

27  conclusions, the court must set aside the ALJ's decision if the ALJ failed to apply the

28  proper legal standards in weighing the evidence and reaching his or her decision.  See

1    Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  The

2    reviewing court may enter "a judgment affirming, modifying, or reversing" the

3    Commissioner's decision.  42 U.S.C. § 405(g).  However, the reviewing court "may not

4    reverse an ALJ's decision on account of an error that is harmless."  Rounds v. Comm'r of

5    the Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (quoting Molina v. Astrue, 674

6    F.3d 1104, 1111 (9th Cir. 2012)).  The reviewing court may also remand the case to the

7    Social Security Administration for further administrative proceedings.  42 U.S.C. § 405(g).

8                                  **V.       DISCUSSION**

9        **A.    Whether the ALJ Conducted a Proper Supportability and Consistency**

10              **Analysis Regarding the Opinion of Lane B. Andelin, Psy.D.**

11              **1.    Summary of the parties' arguments**

12          Plaintiff argues that the ALJ did not properly evaluate the opinion of Lane B.

13    Andelin, Psy.D. ("Dr. Andelin"), who examined Plaintiff on March 30, 2016.  (See Mot. at

14    7.)  Specifically, Plaintiff argues that "[t]he ALJ's failure to conduct a proper

15    supportability and consistency analysis" of Dr. Andelin's opinion constitutes harmful

16    legal error which requires remand.  (Id. at 11.)  Plaintiff claims that the ALJ's decision is

17    erroneous because she "completely ignores the support provided within Dr. Andelin's

18    own examination" and "fail[s] to point to any specific evidence that is inconsistent with

19    Dr. Andelin's opinion."  (Id. at 10.)  Further, Plaintiff contends that Dr. Andelin's opinion

20    is critical to the ALJ's RFC determination and "contains objective evidence that can assist

21    an adjudicator in[] a determination of Plaintiff's work-related mental limitations."  (Id.)

22    To summarize, Plaintiff challenges the ALJ's finding that Dr. Andelin's opinion was "less

23    persuasive," claiming that "the ALJ did not provide a proper supportability and

24    consistency analysis of this opinion."  (Id.)

25          In response, the Commissioner argues that the ALJ properly articulated how she

26    considered the supportability and consistency factors when assessing Dr. Andelin's

27    opinion.  (Opp'n at 5.)  The Commissioner contends that the ALJ considered the mild and

28    moderate limitations identified by Dr. Andelin when making her RFC determination,

and—although the ALJ did not consider the marked limitation identified by Dr. Andelin—the ALJ provided a valid rationale for not doing so.  (<u>Id.</u> at 3–4.)  According to the Commissioner, the ALJ acknowledged the supportability factor by noting that Dr. Andelin's opinion relies on Plaintiff's subjective allegations, rather than objective medical evidence.  (<u>Id.</u> at 4.)  The ALJ acknowledged the consistency factor by noting that Dr. Andelin's opinion regarding Plaintiff's marked limitation in complex decision-making was inconsistent with the overall record.  (<u>Id.</u>)  To summarize, the Commissioner states that the ALJ "adopted the mild and moderate limitations Dr. Andelin assessed, but reasonably rejected the [marked] limitation while explaining why portions of the opinion were not welcome, supported, or consistent with the record."  (<u>Id.</u> at 2.)

## 2.    Applicable law

The residual functional capacity assessment is first used during step four of the sequential evaluation process to determine whether the claimant can perform past relevant work.  <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1153 (9th Cir. 2017).  If the claimant cannot perform past relevant work, the residual functional capacity assessment is used again during step five—along with the claimant's age, education, and work experience—to determine whether the claimant "can make an adjustment to other work."  <u>Id.</u> (quoting 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)).  The ALJ is responsible for assessing the claimant's residual functional capacity.  20 C.F.R. §§ 404.1546(c), 416.946(c).  If there are conflicting opinions as to the claimant's residual functional capacity, the ALJ may choose which opinions to credit and which to reject.  However, to reject a treating or an examining physician's opinion, the ALJ must provide "clear and convincing reasons," if the opinion is *uncontradicted* by other evidence, or "specific and legitimate reasons," if the opinion is *contradicted* by other evidence.  <u>Woods v. Kijakazi</u>, 32 F.4th 785, 789 (9th Cir. 2022) (citations omitted).

For claims filed on or after March 27, 2017, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must evaluate the persuasiveness

1  of medical opinions using the following factors: (1) supportability, (2) consistency, (3)

2  the relationship between the source and the claimant, (4) the source's specialization,

3  and (5) other factors such as the source's knowledge of other evidence and whether

4  there was subsequently submitted evidence.  Id. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–

5  (5).  "'The most important factors' that the agency considers when evaluating the

6  persuasiveness of medical opinions are 'supportability' and 'consistency.'"  Woods, 32

7  F.4th at 791 (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  "Supportability"

8  measures the extent to which objective medical evidence and supporting explanations

9  reinforce a medical finding.  See 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

10  "Consistency" measures the extent to which a medical opinion is consistent with

11  evidence from other medical sources and non-medical sources in the record.  Id. §§

12  404.1520c(c)(2), 416.920c(c)(2).  Critically, "an ALJ's decision, including the decision to

13  discredit any medical opinion, must simply be supported by substantial evidence."

14  Woods, 32 F.4th at 787.

15                    **3.    Dr. Andelin's opinion**

16          Per the state agency's request, Dr. Andelin performed a psychological

17  examination of Plaintiff on March 30, 2016.  (See AR 480.)  As detailed in Dr. Andelin's

18  report [AR 479–89], Dr. Andelin opined that Plaintiff's impairments "interfere with his

19  ability [for] reality-testing, comprehension, understanding of required instructions,

20  consistency with learning and training, emotional regulation, motivation, and energy."

21  (AR 486.)  Dr. Andelin further opined that Plaintiff has mild limitations in interacting

22  appropriately with the public, supervisors, and co-workers; moderate limitations in

23  understanding and remembering complex instructions, carrying out complex

24  instructions, and responding appropriately to usual work situations and to changes in a

25  routine work setting; and a marked limitation in the ability to make judgments on

26  complex work-related decisions.  (AR 486–87.)

27  //

28  //

#### 4.    Analysis

The ALJ found Dr. Andelin's opinion "less persuasive."  (AR 25.)  The ALJ reasoned that "the overall record demonstrates that [Plaintiff] has no more than mild or moderate limitation[s]," thereby rejecting Dr. Andelin's opinion that Plaintiff has any marked limitations.  (AR 25, 486.)  Now, this Court must assess whether the ALJ appropriately considered the supportability and consistency factors when evaluating Dr. Andelin's opinion and, if not, whether the ALJ's RFC determination reasonably accounted for the limitations identified by Dr. Andelin.  The RFC determination must be consistent with the relevant assessed limitations but need not be identical to them.  See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010).

#### a.    Supportability

Addressing the supportability factor, the ALJ notes that Dr. Andelin "supported his opinion . . . with [Plaintiff]'s alleged subjective symptoms," for example, Plaintiff's allegation that he suffers from social anxiety and an inability to interact with others.  (AR 25.)  The ALJ's decision implies that an ALJ may reject the opinion of a consultative examiner if the opinion is based on the claimant's self-reported symptoms.  In the Ninth Circuit, this is generally true.  See, e.g., Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based 'to a large extent' on [a claimant]'s self-reports and not on clinical evidence, and the ALJ finds the [claimant] not credible, the ALJ may [reject] the treating provider's opinion.") (quoting Tommasetti, 533 F.3d at 1041).  In the context of psychological examinations, however, the Ninth Circuit has carved out an important exception.  Recognizing that psychological examinations inherently rely on a combination of self-reports and clinical observations, the Ninth Circuit has held that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness."  Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017).  Thus, psychological examinations may be supported even when they depend on subjective reporting, as this is intrinsic to the nature of psychiatry.

1    Here, the only reason proffered by the ALJ for her conclusion that Dr. Andelin's

2  opinion is not supported is that Dr. Andelin relied upon "[Plaintiff]'s alleged subjective

3  symptoms."  (See AR 25.)  As discussed above, Dr. Andelin was permitted to do so.

4  Because the ALJ failed to offer any further discussion of supportability [Reply at 2], the

5  ALJ did not satisfy the "supportability" requirement of the relevant analysis.  See 20

6  C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

### b.    Consistency

8    Plaintiff further alleges that the ALJ did not satisfy the "consistency" requirement

9  of the relevant analysis.  See id. §§ 404.1520c(b)(2), 416.920c(b)(2).  Plaintiff emphasizes

10  that Dr. Andelin's opinion is "the only mental opinion" of record.  (Mot. at 10, 11, 13.)

11  However, the fact the record contains only one mental opinion does not force the

12  conclusion that Dr. Andelin's opinion was consistent.  See Kitchen v. Kijakazi, 82 F.4th

13  732, 741 (9th Cir. 2023) (affirming the ALJ's decision to discount a consultative

14  examiner's opinion of the claimant's limitations due to inconsistencies with the medical

15  record and the consultative examiner's own unremarkable examinations).  When

16  addressing the consistency factor, an ALJ is permitted to consider a mental opinion

17  alongside "other medical sources and non-medical sources in the record."  See 20 C.F.R.

18  §§ 404.1520c(c)(2), 416.920c(c)(2).  Any internal inconsistency within Dr. Andelin's

19  opinion, by itself, could be a legitimate reason to find the opinion less persuasive.

20  However, the ALJ did not explicitly discuss any internal inconsistencies within Dr.

21  Andelin's opinion.  "A reviewing court may not make independent findings based on the

22  evidence before ALJ to conclude that the ALJ's error was harmless."  Brown-Hunter v.

23  Colvin, 806 F.3d 487, 492 (9th Cir. 2015).  Rather, the reviewing court is "constrained to

24  review the reasons the ALJ asserts."  Id. (quoting Connett v. Barnhart, 340 F.3d 871, 874

25  (9th Cir. 2003)).  Ultimately, the ALJ found Dr. Andelin's opinion "less persuasive"

26  because it was inconsistent with the overall record regarding Plaintiff's mental status, as

27  determined by other medical and non-medical sources in the record.  (See AR 25.)

28  //

The ALJ concluded that Dr. Andelin's opinion was inconsistent with other medical and nonmedical sources in the record.  (See id.)  In support of her finding, the ALJ provided examples of Plaintiff interacting freely and without social anxiety on numerous occasions, as observed by various medical and nonmedical sources.  (See AR 24–26.)  The ALJ notes that Latifa A. Fakoya, D.O. ("Dr. Fakoya") examined Plaintiff less than three weeks after Dr. Andelin and found that Plaintiff "displayed no anxiety signs" and instead was "pleasant, cooperative, and appeared in no acute distress."  (See AR 495; see also AR 23.)  Additionally, the ALJ cites to the Cooperative Disability Investigations Unit's finding several months later that Plaintiff "showed no social anxiety with regards to meeting with law enforcement officers[,] . . . communicated adequately, and demonstrated that he could track, understand, and remember simple instructions and conversations."  (See AR 508; see also AR 21.)  The ALJ also found inconsistencies within Marie Pittman, P.A.,'s multiple evaluations of Plaintiff in 2016, during which Plaintiff was documented as having good judgment, normal mood, alertness, and proper orientation as to time, place, and person.  (See AR 517–32; see also AR 21, 24.)  Each of these sources is inconsistent with Dr. Andelin's opinion.  Thus, Plaintiff is incorrect that "the ALJ fails to point to any specific evidence that was inconsistent with Dr. Andelin's opinion." (Reply at 4.)  The ALJ thoroughly evaluated Dr. Andelin's opinion and provided ample support for her determination that his opinion was "less persuasive" in comparison with the overall record.  Therefore, the ALJ satisfied the "consistency" requirement of the relevant analysis.  See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Although the ALJ erred during her supportability analysis, her consistency analysis was sound.  Under such circumstances, reversal of the ALJ's decision is not automatically required.  An ALJ's decision will only be reversed if the error is not harmless.  Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021).  Although the supportability and consistency factors are the most important considerations when evaluating the persuasiveness of medical opinions, even if the ALJ errs in evaluating one of these factors, the error may be deemed harmless if substantial evidence supports the ALJ's

1  decision.  See generally id.  Here, the ALJ's error in her supportability analysis does not

2  warrant reversal, because the error is not significant enough to cast doubt on the ALJ's

3  disability determination.  See Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) ("We may

4  affirm the ALJ's decision even if the ALJ made an error, so long as the error was

5  harmless, meaning it was 'inconsequential to the ultimate nondisability

6  determination.'") (quoting Tommasetti, 533 F.3d at 1038).  Despite finding Dr. Andelin's

7  opinion to be "less persuasive" [AR 25], the ALJ nevertheless accounted for the mild and

8  moderate limitations identified by Dr. Andelin in her RFC determination but rejected the

9  marked limitation because it was inconsistent with the overall record.  Thus, as

10  discussed below, the ALJ's error was harmless.

11  **c.    The RFC determination**

12      First, Dr. Andelin opined that Plaintiff has mild limitations in interacting

13  appropriately with the public, supervisors, and co-workers.  (AR 487.)  The ALJ agreed

14  with Dr. Andelin that Plaintiff has a mild limitation "[i]n interacting with others."  (AR

15  21.)  The ALJ's RFC determination sufficiently addressed Dr. Andelin's opinion regarding

16  Plaintiff's mild limitations by limiting Plaintiff to unskilled work, including occupations

17  with little human interaction such as production assembler.  (See AR 27.)  Unskilled jobs

18  require only limited interaction with people.  Seth D. v. Kijakazi, 2023 U.S. Dist. LEXIS

19  223941, at *51 (S.D. Cal. Dec. 15, 2023); SSR 85-15 1985 WL 56857 (Jan. 1, 1985) (stating

20  that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with

21  data or people").

22      Next, Dr. Andelin opined that Plaintiff has moderate limitations in understanding

23  and remembering complex instructions, carrying out complex instructions, and

24  responding appropriately to usual work situations and to changes in a routine work

25  setting.  (AR 486–87.)  Again, the ALJ agreed with Dr. Andelin that Plaintiff has a

26  moderate limitation "[i]n understanding, remembering, or applying information," as

27  well as a moderate limitation in "adapting or managing oneself."  (AR 21–22.)  The ALJ's

28  RFC determination adequately accounted for Dr. Andelin's opinion regarding Plaintiff's

moderate limitations by limiting Plaintiff to work where only "occasional changes in the workplace" occur.  (AR 22.)

Finally, Dr. Andelin opined that Plaintiff has a marked limitation in making judgments on complex work-related decisions.  (AR 21.)  The ALJ disagreed with Dr. Andelin.  Relying on the overall record, the ALJ determined that Plaintiff "has no more than mild or moderate limitation[s]."  (AR 25.)  Notwithstanding her rejection of Dr. Andelin's opinion, the ALJ appropriately incorporated Dr. Andelin's concerns regarding Plaintiff's limitations in making complex decisions by limiting Plaintiff only to jobs that require him to "understand, remember, and perform simple work," as opposed to complex work.  (AR 22.)  Therefore, the ALJ's RFC determination reasonably accounted for the mild, moderate, and marked limitations identified by Dr. Andelin.

### 5.   Conclusion

The ALJ reasonably considered Dr. Andelin's opinion and identified aspects that were contradictory to the overall record.  The ALJ's assessment of Plaintiff's limitations and her RFC determination are sound.  Accordingly, the Court recommends that the ALJ's findings regarding Dr. Andelin's opinion be affirmed.

### B.   Whether the ALJ's RFC Determination Is Erroneous Due to the ALJ's Reliance on Her Own Lay Medical Opinion

### 1.   Summary of the parties' arguments

Plaintiff argues that "the ALJ's RFC determination is not supported by substantial evidence because the ALJ crafted the mental portion of the RFC out of thin air and did not account for Plaintiff's limitations in concentration, persistence, pace, or social interactions."  (Mot. at 11–12.)  Plaintiff reiterates that the ALJ "reject[ed] the mental opinions of record" and "crafted an RFC based on her own interpretation of the evidence."  (Id. at 13.)  Plaintiff contends that "the clearest picture of Plaintiff's mental limitations was outlined by Dr. Andelin" but claims that the ALJ substituted "her own lay medical opinion."  (Id. at 14.)  According to Plaintiff, Dr. Andelin's determinations regarding Plaintiff's mild, moderate, and marked limitations, as well as Plaintiff's self-

13

1   reported symptoms, were not properly considered by the ALJ in her RFC determination.

2   (Id.)  Finally, Plaintiff argues that the ALJ relied on testimony from a vocational expert

3   who "was not given a hypothetical question which incorporated all of Plaintiff's mental

4   limitations." (Id. at 15.)

5          In response, the Commissioner argues that there is no authority which requires an

6   ALJ to rely on a medical opinion when making an RFC determination.  (Opp'n at 7.)  In

7   any event, the Commissioner argues that "the ALJ agreed with and accommodated the

8   mild and moderate limitations Dr. Andelin assessed, and she reasonably rejected the

9   marked limitation he found." (Id.)  The Commissioner explains that "the ALJ restricted

10  Plaintiff to occasional changes in the workplace" to account for "Dr. Andelin's finding

11  that Plaintiff was moderately limited in responding appropriately to usual work

12  situations and to changes in a routine work setting." (Id. at 8.)  The Commissioner

13  further explains that the ALJ agreed with Dr. Andelin's finding that Plaintiff has only a

14  mild limitation in social interaction and therefore "declined to include a restriction

15  regarding social interactions in the RFC." (Id.)  The Commissioner notes that, in support

16  of this finding, the ALJ cites multiple other examinations of Plaintiff in which Plaintiff

17  was observed as having a normal mood and displaying no signs of anxiety. (Id.)  Next,

18  regarding Plaintiff's ability to concentrate, persist, or maintain pace, the Commissioner

19  argues that "[b]y restricting Plaintiff to simple, unskilled work, the ALJ accommodated

20  mild limitations in concentrating, persisting, or maintaining pace." (Id.)  Finally, the

21  Commissioner argues that "Plaintiff is repeating his previous claims that the ALJ erred in

22  evaluating Dr. Andelin's opinion and in formulating the RFC" by arguing against the

23  validity and completeness of the hypothetical provided to the vocational expert. (Id. at

24  10.)

25         **2.    Applicable law**

26         RFC, or residual functional capacity, is a claimant's ability to do work-related

27  activities on a sustained basis (i.e., eight hours a day, five days per week). Titles II & XVI:

28  Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-

8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Thus, a claimant's RFC represents the maximum amount of work a claimant can perform, despite his or her limitations, based on all relevant evidence in the record. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making an RFC determination, the ALJ must consider all the claimant's medically determinable impairments, including those that are non-severe. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); see also Buck, 869 F.3d at 1049 (9th Cir. 2017) (quoting SSR 96-8P, 1996 WL 374184, at *5). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." Buck, 869 F.3d at 1049.

    Although the RFC determination draws from medical sources for support, the RFC is ultimately "a legal decision that is expressly reserved to the Commissioner." Vaughn v. Berryhill, 242 F. Supp. 3d 998, 1008 (E.D. Cal. 2017). Thus, the ALJ bears the primary responsibility for determining a claimant's RFC based on all relevant evidence. See id. Although the ALJ must develop the record to ensure that it contains sufficient evidence to assess residual functional capacity, the burden of persuasion to prove disability remains on the claimant. See Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).

    The ALJ has a duty to develop the record fully and fairly and to assure that the claimant's interests are considered. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)) (citation omitted). However, "[the] ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Agatucci v. Berryhill, 721 F. App'x 614, 617 (9th Cir. 2017) (quoting McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011)). The claimant is generally "responsible for providing the evidence" used to make the residual functional capacity determination. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support [the ALJ's] conclusion." Ocegueda v. Colvin, 630 F. App'x 676, 677 (9th Cir. 2015) (citation omitted). To reiterate, "[w]here evidence is susceptible to

24cv1774-WQH (MSB)

1    more than one rational interpretation, it is the ALJ's conclusion that must be upheld."

2    Burch, 400 F.3d at 679.

3        In the Ninth Circuit, when the claimant suffers from non-exertional impairments,

4    such as psychiatric impairments, the ALJ is required to use a vocational expert at step

5    five to establish whether the claimant is disabled.  See Tackett v. Apfel, 180 F.3d 1094,

6    1102 (9th Cir. 1999).  The hypothetical question posed to a vocational expert "must set

7    out *all* the limitations and restrictions of the particular claimant . . . ."  Embrey v. Bowen,

8    849 F.2d 418, 422 (9th Cir. 1988).  "Substantial evidence does not support a finding of

9    disability where the [vocational expert]'s testimony either is contradictory or responds

10   to an inaccurate hypothetical."  Hamilton v. Comm'r of Soc. Sec. Admin., 464 F. App'x

11   681, 682 (9th Cir. 2012).

12        **3.    Analysis**

13            **a.    The RFC determination**

14        Plaintiff argues that the ALJ's findings regarding Plaintiff's limitations are not

15   supported by substantial evidence due to the ALJ's alleged disregard of Dr. Andelin's

16   opinion, and thus, the RFC determination was "crafted out of thin air."  (Mot. at 11.)  On

17   the contrary, the ALJ reviewed and cited numerous records documenting Plaintiff's

18   physical and mental health dating back to 2011.  (See AR 21–22.)  The ALJ considered

19   Plaintiff's own hearing testimony, prior administrative medical findings, and all available

20   state agency reports when making her RFC determination.  (See AR 17–27.)  The ALJ

21   evaluated Plaintiff's alleged physical pain (e.g., shoulder, cervical spine, lumbar spine),

22   as well as Plaintiff's alleged mental impairments (e.g., "impaired memory, problems

23   with concentration, fatigue, impulsive actions, impaired sleep, racing thoughts, rapid

24   speech, panic attacks, social anxiety, nightmares, flashbacks, hypervigilance, and

25   heightened startle reflex").  (AR 23–24.)  The ALJ reviewed and considered various

26   professionals' evaluations of Plaintiff, including law enforcement investigators, doctors,

27   nurses, physician assistants, and therapists to determine how Plaintiff's alleged mental

28   health impairments impacted Plaintiff's RFC.  (See AR 22–26.)

After the ALJ reviewed Plaintiff's mental health records, she assessed his mental health functioning in four broad areas known as the "paragraph B" criteria. (See AR 20–22.) The ALJ determined that Plaintiff has mild limitations in "interacting with others" and "concentrating, persisting, or maintaining pace." (AR 21.) The ALJ also determined that Plaintiff has moderate limitations in "understanding, remembering, or applying information" and in "adapting or managing oneself." (AR 21–22.) However, the ALJ found that Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," and thus, "the 'paragraph B' criteria are not satisfied." (AR 22.) The ALJ's RFC determination accounted for the aforementioned mild and moderate limitations by restricting Plaintiff to jobs that require understanding and memory of "simple work" and workplaces in which only "occasional changes" occur. (Id.) The ALJ had no duty to develop the record further because the evidence unambiguously supports the RFC determination. See Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001) (holding that the ALJ had no duty to develop the record because the record was "neither ambiguous nor inadequate").

Plaintiff's argument that Dr. Andelin's opinion is the "only mental opinion of record," and thus, the ALJ's lack of consideration of this opinion renders her RFC determination invalid lacks merit. (See Mot. at 11.) Plaintiff correctly points out that the ALJ found the state agency psychological consultants' opinion to be "not persuasive" because "they declined to provide an opinion on [Plaintiff's] [residual] functional capacity." (See AR 25.) Whether or not Dr. Andelin's opinion was the only remaining mental opinion of record is immaterial because an ALJ is not required to adopt a medical opinion, even if it is the only mental opinion of record. Instead, the ALJ has discretion to evaluate the persuasiveness of medical opinions based on factors such as supportability and consistency. See 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The applicable regulations emphasize that the ALJ must articulate how the ALJ considered these factors when determining the persuasiveness of a medical opinion, but they do not mandate the adoption of any specific opinion, even if it is uncontradicted. In any event, Dr. Andelin's

1    opinion *is* contradicted.  Multiple evaluations by medical and nonmedical sources

2    contradict Dr. Andelin's findings, in whole or in part, particularly those regarding

3    Plaintiff's social anxiety and capacity to remember and understand instructions.  The ALJ

4    cites evaluations conducted by Dr. Fakoya, state agency medical consultants, and state

5    agency psychological consultants as evidence to support her RFC determination.  (See

6    AR 25.)

7            Plaintiff further argues that "the RFC reflects an individual who is *unimpaired*

8    regarding social interaction or concentration, persistence, and pace."  (Mot. at 14.)

9    However, the ALJ explicitly acknowledges that, "[w]ith regard to concentrating,

10   persisting, or maintaining pace, [Plaintiff] has a mild limitation."  (AR 21.)  Regarding

11   Plaintiff's alleged impairments of "impaired memory, problems with concentration,

12   fatigue, impulsive actions, impaired sleep, racing thoughts, rapid speech, panic attacks,

13   social anxiety, nightmares, flashbacks, hypervigilance, and heightened startle reflex,"

14   the ALJ cites other psychological and physical evaluations of Plaintiff, particularly those

15   immediately following Dr. Andelin's evaluation in 2016, as support for her RFC

16   determination.  (AR 24.)  The ALJ further explains how she weighed Dr. Andelin's opinion

17   regarding Plaintiff's social anxiety against the other medical opinions in the overall

18   record that describe Plaintiff as "communicat[ing] adequately" and "hav[ing] no signs of

19   social anxiety" to support her RFC determination.  (Id.)  The ALJ cites various

20   descriptions of Plaintiff's lack of social anxiety and ability to "be active, oriented, and

21   alert, to have good insight and judgment, normal mood, normal affect, and normal

22   recent and remote memory" as evidence that Dr. Andelin's opinion is less persuasive,

23   and Plaintiff's limitations are no more than mild.  (Id.)  Therefore, the ALJ appropriately

24   determined Plaintiff's RFC by thoroughly considering all relevant evidence.

25                    **b.    The vocational expert's hypothetical**

26           Finally, Plaintiff argues that "[t]he ALJ relied on vocational expert testimony

27   proffered during the hearing to make a determination that Plaintiff is not disabled."

28   (Mot. at 15.)  According to Plaintiff, "the vocational expert was not given a hypothetical

question which incorporated all of Plaintiff's mental limitations," and because "neither the hypothetical nor the answer properly set forth all of Plaintiff's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."  (Id.)  During the hearing, the ALJ asked the vocational expert, Daniel Best, to consider the following:

> [P]lease assume an individual of [Plaintiff]'s age, education, and past work, who can occasionally lift 20 pounds; frequently lift 10 pounds; can stand/walk for a total of about 6 hours, and sit for about 6 hours in an 8-hour day; can never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; can understand, remember, and perform simple work; and can tolerate occasional changes in the workplace.

(AR 46.)

The ALJ then asked the vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (Id.; AR 26–27.)

The hypothetical question posed by the ALJ incorporates Plaintiff's limitations, as supported by the overall record, and takes care "[t]o determine the extent to which these limitations erode the unskilled light occupational base."  (AR 26.)  First, the hypothetical question posed by the ALJ incorporates Plaintiff's mild limitations in interacting with others and in concentrating, persisting, or maintaining pace by asking the vocational expert to consider an individual who "performs simple work and can tolerate occasional changes in the workplace."  (See AR 46.)  Second, the hypothetical question posed by the ALJ incorporates Plaintiff's moderate limitations in understanding, remembering, and carrying out complex instructions as well as responding appropriately to usual work situations and to changes in a routine work setting by asking the vocational expert to consider an individual who "can understand, remember, and perform simple work and can tolerate occasional changes in the workplace."  (Id.)  The Ninth Circuit has held that an ALJ does not err by failing to "explicitly include Plaintiff's moderate limitations verbatim" so long as the RFC properly incorporated the limitations and was supported by substantial evidence.  Robbins v. Soc.

1  Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); McIntosh v. Colvin, No. 16cv963-JAH-

2  BGS, 2018 WL 1101102, at *8 (S.D. Cal. Feb. 26, 2018).

3         After considering this hypothetical, the vocational expert identified three jobs

4  requiring a "light exertional level" that Plaintiff could perform in the national economy:

5  (1) cashier II, (2) fast food worker, and (3) production assembler.  (AR 27.)  The ALJ

6  determined that the vocational expert's testimony was "consistent with the information

7  contained in the Dictionary of Occupational Titles" and "[a] finding of 'not disabled' is

8  therefore appropriate."  (Id.)  The ALJ met her burden at step five by finding that an

9  individual with Plaintiff's RFC could perform the aforementioned jobs, each with a range

10 of 50,000 to 1,900,000 jobs available in the national economy.  (See AR 27; see also 20

11 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).)  Further, the ALJ reasonably relied on the

12 vocational expert's testimony in reaching this conclusion.  See Ford, 950 F.3d at 1160

13 (holding that a qualified vocational expert's testimony regarding the number of jobs

14 available in the national economy that a claimant can perform is sufficient to support an

15 ALJ's step-five finding).  There is substantial evidence to support the ALJ's finding

16 because she relied on Plaintiff's own description of his limitations, the vocational

17 expert's testimony, and the Dictionary of Occupational Titles ("DOT").  See Zavalin v.

18 Colvin, 778 F.3d 842, 845–46 (9th Cir. 2015) (noting that the DOT is the Agency's

19 "primary source of reliable job information").

20        Plaintiff is responsible for "provid[ing] the evidence to be used in making the

21 [RFC] finding."  See Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir.2006) (internal

22 citations and quotation marks omitted); see also 20 C.F.R. §§ 404.1512(c),

23 404.1545(a)(3).  Here, the ALJ reviewed the record in its entirety and supported her RFC

24 determination by citing the unambiguous opinions of multiple medical and nonmedical

25 sources.  Plaintiff failed to demonstrate that the evidence before the ALJ was

26 insufficient to determine disability.  Thus, the ALJ did not have a duty to develop the

27 record further.  See Mayes, 276 F.3d at 460.  The Court finds the ALJ's interpretation of

28 the evidence is rational.  See Tommasetti, 533 F.3d at 1038.

### 4.    Conclusion

The ALJ's RFC determination is supported by substantial evidence, as exemplified by her thorough consideration of the overall record, including the testimony of the vocational expert.  Accordingly, the Court recommends that the ALJ's findings regarding her RFC determination be affirmed.

## VI.    CONCLUSION

A reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g).  A reviewing court may also remand the case to the Social Security Administration for further proceedings. Id.  The reviewing court has discretion in determining whether to remand for further proceedings or award benefits.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the claimant is entitled.  See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).

Here, Plaintiff argues the ALJ's decision was not supported by substantial evidence, and thus this matter should "be remanded to the Commissioner for further administrative proceedings including a de novo hearing and new decision."  (Mot. at 15.) The Commissioner asks the Court to affirm the Commissioner's decision.  (Opp'n at 2.)

For the foregoing reasons, the Court **RECOMMENDS** that Judgment be entered **AFFIRMING** the decision of the Commissioner.

**IT IS ORDERED** that no later than **January 20, 2026**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 27, 2026**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  January 6, 2026

Honorable Michael S. Berg
United States Magistrate Judge

24cv1774-WQH (MSB)